UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Aria Ariel Shani**<br><br>    Plaintiff,<br><br>v.<br><br>**Donald J. TRUMP,** in his official capacity as President of the United States;<br><br>**Kristi NOEM,** in her official capacity as Secretary of the United States Department of Homeland Security;<br><br>**Todd LYONS,** Acting Director, U.S. Immigration and Customs Enforcement;<br><br>**Pamela BONDI,** in her official capacity as Attorney General, U.S. Department of Justice;<br><br>**Yolanda PITTMAN,** Warden, Elizabeth Detention Center. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FIRST AND FIFTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, THE RELIGIOUS FREEDOM RESTORATION ACT (RFRA) AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA)** |

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.   This case concerns the civil detention of a rabbinical scholar whose faith, family, and physical health are being systematically eroded by government indifference. Petitioner Aria Ariel Shani ("Petitioner"), an Ultra-Orthodox Jewish asylum seeker, arrived at John F. Kennedy International Airport with his wife and infant child on February 12, 2025. He came seeking refuge from persecution. Instead, he was separated from his family, detained by immigration officers, and placed in conditions that have forced him to choose between violating his core religious beliefs and suffering hunger, illness, and spiritual anguish.

2.  Petitioner's treatment is not an isolated administrative failure; it is a sustained pattern of constitutional and statutory violations. Over nearly two months, he has been denied Glatt Kosher food, prayer accommodations, sacred religious items, and even the ability to observe the Sabbath. With Passover approaching—a holiday central to Jewish identity—his continued detention ensures irreparable harm. This Court's intervention is not only urgent, it is necessary to preserve the rights and dignity the Constitution promises to all persons on U.S. soil.

3.  Petitioner brings this action seeking habeas relief under 28 U.S.C. § 2241, the First and Fifth Amendments, the Religious Freedom Restoration Act (RFRA), and the Religious Land Use and Institutionalized Persons Act (RLUIPA), seeking immediate release, declaratory relief, and an injunction prohibiting further unlawful detention or religious interference.

## JURISDICTION

4.  This Court has jurisdiction over this habeas corpus petition pursuant to 28 U.S.C. § 2241, which authorizes federal courts to grant relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States." Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") under color of federal authority, and challenges the legality of his continued civil immigration detention and the conditions thereof as violative of statutory and constitutional law.

5.  This Court also has jurisdiction under 28 U.S.C. § 1331, which provides federal question jurisdiction over actions arising under the Constitution and laws of the United States, including but not limited to the First and Fifth Amendments, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq., and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq.

## VENUE

6. Venue is proper in this District under 28 U.S.C. § 2241(d) and 28 U.S.C. § 1391(e) because Petitioner is currently detained at the Elizabeth Contract Detention Facility, which is located within the jurisdiction of this Court. Petitioner's custodian, the warden of the Elizabeth Contract Detention Facility, is located within this District, and a substantial part of the events or omissions giving rise to the claims occurred here.

## PARTIES

7. Petitioner **Aria Ariel Shani** is an Ultra-Orthodox Jewish rabbinical scholar and asylum seeker from Israel. He is currently in civil immigration detention at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey, where he is held in the custody of ICE. He brings this action to vindicate his constitutional and statutory rights to religious freedom and due process.

8. Respondent **Donald J. Trump** is sued in his official capacity as President of the United States. As head of the executive branch, he is responsible for the enforcement of federal immigration laws and the oversight of detention practices carried out by the Department of Homeland Security.

9. Respondent **Kristi Noem** is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS), the federal agency with authority over immigration enforcement, detention, and removal operations. DHS oversees both ICE and U.S. Customs and Border Protection (CBP), and is responsible for ensuring compliance with constitutional and statutory mandates.

10. Respondent **Todd Lyons** is sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement. ICE is the agency directly responsible for Petitioner's detention and for the conditions under which he is confined.

11. Respondent **Pamela Bondi** is sued in her official capacity as Attorney General of the United States. The Department of Justice is responsible for legal oversight of immigration detention and enforcement policies and is charged with ensuring that federal agencies act in accordance with the Constitution and federal law.

12. Respondent **Yolanda Pittman** is sued in her official capacity as Warden of the Elizabeth Contract Detention Facility, where Petitioner is currently held. As warden, she is responsible for the day-to-day conditions of Petitioner's confinement and for implementing or failing to implement religious accommodations.

## FACTUAL BACKGROUND

13. Petitioner Aria Ariel Shani is a devout Ultra-Orthodox Jewish rabbinical scholar and citizen of Israel. He is married to Ester Raz and the father of a one-year-old child. Together with his wife and son, he traveled to the United States seeking asylum from religious persecution in Israel.

14. Petitioner has lived his entire life in strict adherence to the obligations of his faith. His religious practice includes maintaining a strict Glatt Kosher diet; observing the Sabbath, which prohibits writing, travel, or use of electronics from sundown Friday to sundown Saturday; performing daily prayer rituals using sacred items such as Tefillin (ritual boxes worn during morning prayer), Tallis (prayer shawl), and Tzitzis (fringed religious undergarment); and participating in mandated holiday observances such as Purim, which require specific foods and rituals.

15. On February 12, 2025, Petitioner arrived at John F. Kennedy International Airport in New York with his wife and infant son, pursuant to the Visa Waiver Program. At primary inspection, he requested asylum.

16. CBP detained the family and questioned them repeatedly, together and separately, with little opportunity for sleep or nourishment, and without the use of a qualified interpreter. Upon information and belief, they were not provided with kosher food during this time.

17. During their detention, Ms. Raz began experiencing severe abdominal pain and vaginal bleeding. She had taken a pregnancy test prior to the trip, which had returned positive. Eventually, she was transported to Jamaica Hospital. Petitioner was not allowed to accompany her.

18. After she was released from the hospital and returned to CBP custody, Petitioner's wife was informed that she would be released with an electronic ankle monitor. Officers proceeded to apply the device while multiple personnel were present in the room. No interpreter was provided.

19. Upon information and belief, and according to Ms. Raz, the monitor was placed on her during the Jewish Sabbath, despite her pleas to wait until after its conclusion.

20. Ms. Raz was released, but her passport was never returned by CBP. She remains in the United States with their infant child, living with members of the Orthodox Jewish community in New York.

21. On or about February 13, 2025, ICE transferred Petitioner to the South Texas Detention Complex in Pearsall, Texas.

22. Shortly after his arrival, Petitioner began regular phone contact with Rabbi Shulem Lefkowitz and Mr. Yosef Reich—both Orthodox Jewish community leaders and Hebrew speakers.[1] Upon information and belief, Petitioner spoke with them almost daily, offering reports on detention conditions and requesting spiritual support.

---

[1] Counsel has relied in good faith on sworn declarations from individuals with direct knowledge of Petitioner's statements and detention conditions, as well as counsel's own communications with Petitioner and Ms. Raz through an interpreter. Should contrary or additional facts come to light, Petitioner reserves the right, and intends to, amend. The Declaration of Yosef Reich is included as Exhibit A; the Declaration of Rabbi Shulem Lefkowitz as Exhibit B; and the Declaration of Rabbi Yecheskel Gold as Exhibit C.

23. Petitioner informed Mr. Reich and Rabbi Lefkowitz that he was being denied sufficient food. He explained that the portions served to him were often half the size of those given to other detainees and lacked any certified Glatt Kosher markings. On many days, he received only one meal, and at times, no meal at all. He began to lose weight and experience fatigue, dizziness, and gastrointestinal issues.

24. Petitioner informed Mr. Reich that he was housed in a bunk adjacent to a toilet. Under Jewish law, this placement made it religiously impermissible for him to pray, recite blessings, or read sacred texts in that space. Despite his repeated requests, he was not relocated.

25. Petitioner informed both Mr. Reich and Rabbi Lefkowitz that he was repeatedly denied timely access to his Tefillin and prayer shawl—items that must be worn during specific hours of the morning. He reportedly had to beg for hours to access them.

26. Petitioner also informed them that he was denied essential ritual items such as grape juice and challah for Sabbath meals, obstructing his Sabbath observance.

27. Petitioner reported that he was compelled to violate the Sabbath on multiple occasions. He stated that he was forced to write with a pen, be exposed to electronic devices, and travel during hours in which such activities are strictly prohibited by Jewish law.

28. Petitioner further informed Mr. Reich that he requested kosher-certified medication when ill. Medical staff failed to accommodate the request and, upon information and belief, misunderstood his religious restrictions as a refusal to accept treatment. As a result, Petitioner declined non-kosher medication out of religious necessity and suffered untreated symptoms.

29. Petitioner also reported being housed in areas where televisions played offensive and inappropriate content continuously. Under Jewish law, exposure to such imagery is prohibited. He asked to be moved and was ignored.

30. On March 7, 2025, Petitioner's counsel submitted a parole request supported by documentation of his religious needs and extensive community support. Additional submissions followed, including medical concerns, rabbinical letters, and petitions bearing hundreds of signatures.

31. On March 17, 2025, ICE denied the request without providing a meaningful justification.

32. On March 18, 2025, ICE responded stating that the meals met kosher standards per corporate policy and that they were exploring a transfer to a facility "with a larger Jewish community."

33. On or about March 23, 2025, ICE transferred Petitioner to the Elizabeth Contract Detention Facility in New Jersey.

34. In New Jersey, Petitioner was visited by both Rabbi Lefkowitz and Mr. Reich. During those visits, both observed that Petitioner was struggling to maintain even minimal religious observance.

35. Petitioner's counsel submitted a renewed parole request on March 26, 2025, including updated evidence of sponsorship, rabbinical statements, community petitions, and specific requests for religious accommodations.

36. To date, ICE has not responded.

37. The pattern of deprivation continued. Petitioner reported that kosher meals arrived in torn packaging, rendering them noncompliant with Jewish dietary law. He was again denied bread, relocated prayer space, and consistent access to religious garments.

38. Petitioner informed Mr. Reich that he was berated by officers when asking to speak with a rabbi before the Sabbath, and that he was denied visitation in retaliation for refusing to remove his Tzitzis.

39. On April 2, 2025, Petitioner described a particularly troubling incident. He reported to Mr. Reich that five detention officers led him into a confined area. One female officer stood inches from his face and began softly repeating his name. When he turned his gaze to avoid prohibited eye contact, she shifted her position to block his view, deliberately attempting to force a breach of religious modesty.

40. Upon information and belief, ICE has failed to accommodate Petitioner's religious needs in any consistent or meaningful way, despite repeated requests by counsel and community advocates. Petitioner reserves the right to supplement these allegations as further facts are developed.

## **IMMINENT IRREPARABLE HARM**

41. Petitioner is an observant Jew who adheres to a strict Glatt Kosher diet and observes daily prayer, weekly Sabbath rituals, and annual religious holidays, including Passover.

42. Since being taken into ICE custody, Petitioner has experienced significant harm to his physical health, emotional well-being, and ability to practice his faith.

43. Petitioner has lost a noticeable amount of weight and has experienced frequent hunger due to the lack of consistent access to religiously compliant meals.

44. Petitioner has also reported untreated medical conditions while in custody, compounding the physical harm he faces.

45. Petitioner has been denied access to sacred religious items necessary for worship, including a Siddur (prayer book), Tallit (prayer shawl), and Tefillin (phylacteries).

46. Petitioner has not been provided with a clean or private space to perform daily prayers, including morning, afternoon, and evening services, as required by his faith.

47. Petitioner has already missed multiple Jewish observances while in custody, including weekly Sabbath observance and other important religious dates.

48. Passover, one of the most sacred holidays in Judaism, begins on the evening of April 12, 2025. The observance lasts for eight days and includes strict dietary laws and ceremonial requirements.

49. The holiday requires complete abstention from leavened food (chametz), adherence to special kosher-for-Passover rules, and consumption of ritual items including matzah, wine or grape juice, and bitter herbs.

50. Passover observance also includes multiple ritual meals (Seders), extended prayers, and blessings, all of which must be performed in a clean and religiously appropriate environment.

51. Based on past experience in custody, Petitioner has no reason to believe the necessary accommodations will be provided in time or at all.

52. If Petitioner remains in custody past April 12, he will be unable to observe Passover in accordance with his religious beliefs.

53. As a result, Petitioner faces the imminent choice between violating his religious obligations or refusing to eat, each of which would cause significant and irreversible harm.

54. Continued detention will also result in further physical and emotional injury, compounding the harms already suffered.

55. These injuries cannot be remedied after the fact, and Petitioner has no adequate remedy at law.

56. Every day Petitioner remains in ICE custody under current conditions results in ongoing, irreparable harm to his health, faith, and dignity.

57. The urgency of the upcoming holiday and the consistent failure to accommodate Petitioner's religious needs require immediate judicial intervention to prevent further harm.

## CAUSES OF ACTION
### Count I
### 28 U.S.C. § 224: Habeas Corpus – Unlawful Civil Immigration Detention

58. Petitioner's continued detention violates the Constitution and laws of the United States and is unlawful under 28 U.S.C. § 2241.

59. Under 28 U.S.C § 2241, federal courts may grant a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."

60. Petitioner is a noncitizen who requested asylum at a U.S. port of entry. He has been held in ICE custody for nearly two months, despite having no criminal history, posing no flight risk, and having verified housing, legal representation, and strong community sponsorship. ICE has provided no individualized justification for his continued confinement.

61. While detained, Petitioner has been consistently denied access to the religious accommodations required by his faith. Upon information and belief, and as reported by Petitioner, ICE has subjected him to repeated deprivations, including but not limited to:

   a. Denial of glatt kosher meals, resulting in weight loss, illness, and spiritual distress;
   b. Failure to verify kosher certifications or provide compliant packaging, rendering meals inedible;
   c. Refusal to provide grape juice, challah, or other Sabbath observance requirements;
   d. Confiscation and obstruction of sacred items such as Tefillin and Tallis during required prayer times;
   e. Prohibition and interference with daily prayer;
   f. Compelled Sabbath violations, including forced travel and writing;

    g. Retaliation for refusing to remove his religious undergarment (Tzitzis), including canceled visitation;

    h. Verbal harassment while speaking with a rabbi;

    i. Placement in a sleeping area adjacent to a toilet, where religious law forbids prayer and blessings.

62. These conditions substantially burden Petitioner's ability to exercise his religion and violate his rights under the First and Fifth Amendments, the RLUIPA, and RFRA. The severity and persistence of these violations distinguish this case from permissible civil detention and render continued custody unlawful.

63. ICE has demonstrated—both in Texas and New Jersey—that it is unwilling or unable to accommodate Petitioner's basic religious needs. The resulting physical, psychological, and spiritual harm is ongoing and irreparable.

64. Accordingly, Petitioner is entitled to immediate release under 28 U.S.C. § 2241.

## Count II
### Violation of the First Amendment to the United States Constitution - Free Exercise of Religion

65. The First Amendment to the United States Constitution prohibits the government from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

66. The Free Exercise Clause applies to federal agencies, including ICE, and protects all persons within the United States, regardless of immigration status, from government interference with sincerely held religious beliefs.

67. Petitioner has been subject to systemic violations of his religious rights. Despite multiple written requests from Petitioner's legal counsel and community leaders—including detailed

rabbinical explanations of his needs—ICE has refused to make reasonable accommodations or even acknowledge many of the issues.

68. Government interference with religious exercise is subject to strict scrutiny unless it is the result of a neutral law of general applicability. *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). Even in detention, substantial burdens on religious exercise must be justified by a compelling governmental interest and must be narrowly tailored to achieve that interest. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

69. Here, ICE's ongoing conduct cannot meet this standard. The denial of religious meals, sacred items, and observance rights is not justified by any legitimate interest, much less a compelling one. Petitioner poses no risk to institutional security or order, and many of the accommodations he seeks—such as certified food, prayer space, and respectful scheduling—are well within ICE's capacity and consistent with its own Performance-Based National Detention Standards.

70. Moreover, the retaliation against Petitioner for asserting his religious rights—such as revoking visitation rights on April 1, 2025—is a clear constitutional violation in itself.

71. ICE has demonstrated that it cannot or will not accommodate Petitioner's religious obligations in any detention setting. Continued detention thus results in ongoing, unconstitutional violations of his First Amendment rights.

72. Petitioner is entitled to immediate release to prevent further infringement on his right to freely exercise his religion.

## Count III
### 42 U.S.C. § 2000cc et seq.: Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) (Ongoing Substantial Burden on Religious Exercise in Federal Custody)

73. Petitioner's detention substantially burdens his religious exercise in violation of RLUIPA, and no facility under ICE's control has offered a lawful or workable accommodation.

74. RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

75. These burdens are ongoing and cumulative. Under settled law, a burden is "substantial" if it pressures a person to modify or abandon religious practice. *See Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). That standard is met here.

76. The burdens imposed on Petitioner are "substantial" under RLUIPA because they have repeatedly pressured him to violate or abandon fundamental religious obligations. He was forced to travel and write during the Sabbath, despite religious prohibitions against both. He was required to remove his Tzitzis to access visitation. He could not eat for extended periods due to the lack of Glatt Kosher food and could not perform prayer rituals without access to sacred items. These conditions left Petitioner with a stark and unlawful choice: violate halachic law or suffer physical deprivation and isolation, amounting to punishment.

77. ICE's rationale—that Petitioner was transferred to a facility with "a larger Jewish community"—fails to satisfy RLUIPA's requirement of individualized assessment. Petitioner's observance is distinct from other Jewish denominations, and ICE's failure to account for that difference reflects impermissible religious stereotyping.

78. ICE has not demonstrated a compelling interest, nor pursued the least restrictive means of accommodation. Petitioner has proposed reasonable alternatives, including kosher-certified meal delivery, cell relocation, and adjusted visitation protocols, which have been ignored or denied.

ICE's own Performance-Based National Detention Standards (PBNDS) recognize these accommodations as necessary.

79. Because no facility under ICE control has met RLUIPA's standard, and continued detention causes irreparable harm, Petitioner respectfully requests immediate release as the only effective and lawful remedy.

## Count IV
### RFRA – 42 U.S.C. § 2000bb: Violation of the Religious Freedom Restoration Act
### (Substantial Burden on Religious Exercise Without Compelling Justification)

80. The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., provides that the government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that the burden: (1) furthers a compelling governmental interest, and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a)–(b).

81. Since entering ICE custody, Petitioner has faced continuous and escalating religious deprivations at both the South Texas Detention Complex and the Elizabeth, NJ Detention Facility.

82. The religious restrictions imposed on Petitioner have caused him to live in a constant state of fear, hunger, and humiliation, robbing him of the very protections for which he sought refuge in the United States.

83. ICE cannot articulate any compelling governmental interest that justifies these burdens. It has failed to provide individualized explanations for denying these accommodations and has failed to consider or implement alternatives.

84. Even if ICE were able to assert a compelling interest, its actions are not the least restrictive means of achieving any legitimate objective. Petitioner has offered reasonable alternatives and workarounds, such as receiving double-wrapped meals, praying in clean spaces, and tucking in his

Tzitzis during visitation. ICE has either ignored or rejected these without justification. Instead, ICE has failed to accommodate his basic needs and subject him to punitive consequences for seeking to comply with religious obligations.

85. RFRA's protections are especially crucial in detention, where the individual has no alternative means of religious expression. Petitioner cannot purchase his own food, relocate his sleeping quarters, or access a synagogue. He is entirely dependent on ICE for the ability to fulfill his religious duties.

86. Because ICE has demonstrated that it cannot or will not provide the necessary accommodations in any detention setting, immediate release is the only effective and lawful remedy to halt the ongoing violation of Petitioner's rights under RFRA.

## Count V
### Violation of the Fifth Amendment to the United States Constitution: (Substantive and Procedural Due Process Violations)

87. The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall... be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend.

88. This protection applies to all persons within the United States, including noncitizens in civil immigration detention. See *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

*Substantive Due Process*

89. Petitioner's detention also violates substantive due process because it is punitive, degrading, and shocks the conscience.

90. The Due Process Clause prohibits civil detention that is arbitrary, excessive, or so egregious that it "shocks the conscience." See *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). While the government may detain noncitizens for regulatory purposes, that detention must

remain reasonably related to its goals and must not inflict unnecessary suffering. *See Demore v. Kim*, 538 U.S. 510, 527 (2003).

91. Petitioner has no criminal history and poses no threat to the community. Yet for nearly two months, he has been confined under conditions that have inflicted physical, emotional, and spiritual harm. He has been denied access to edible food, prayer garments, medical care, and the ability to observe his faith. These are not administrative oversights; they are persistent violations of basic human dignity.

92. Most egregiously, on April 2, 2025, Petitioner reported that five detention officers led him into a confined area. One female officer stood inches from his face, repeating his name, and deliberately attempted to force him into visual contact in violation of his religious modesty. He turned away; she moved closer. This act, intended to coerce and humiliate, served no security purpose and appears designed to provoke religious distress.

93. Such conduct, particularly against a nonviolent civil detainee, is conscience-shocking. It reflects a broader pattern of mistreatment and religious hostility that renders Petitioner's continued detention constitutionally intolerable.

*Procedural Due Process*

94. Petitioner's continued detention without a meaningful opportunity to seek release violates procedural due process.

95. The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. Noncitizens physically present in the United States, including asylum seekers, are entitled to due process protections. That protection includes the right to challenge detention through fair procedures.

96. Petitioner has not been provided any mechanism to request bond or an individualized custody redetermination. Because he entered the U.S. under the Visa Waiver Program (VWP), he is considered ineligible for bond. However, this categorical ineligibility violates due process where, as here, the individual intends to seek asylum and has been detained for a prolonged period without meaningful review.

97. In *Matter of A-W-*, 25 I. & N. Dec. 45 (BIA 2009), the Board acknowledged that even VWP entrants may be entitled to due process protections in asylum proceedings. The government's blanket application of VWP ineligibility to justify prolonged civil detention—without a bond hearing, parole review, or meaningful procedural safeguards—violates the Fifth Amendment.

## Count VI
### Violation of the Equal Protection Component of the Fifth Amendment: (Religious Discrimination and Arbitrary Classification)

98. ICE has denied Petitioner equal protection of the laws by discriminating against him based on his religious identity, sectarian affiliation, and degree of observance.

99. The Fifth Amendment prohibits federal agencies from treating individuals differently based on religion unless the government can show that the distinction is justified by a compelling interest and narrowly tailored to achieve that end. This includes distinctions based on denomination, religious sect, or level of observance.

100. On or about March 23, 2025, ICE transferred Petitioner to the Elizabeth Contract Detention Facility, stating the move would place him near a "larger Jewish community." That rationale rested on a broad and erroneous assumption: that all Jewish detainees are religiously interchangeable.

101. As an Ultra-Orthodox Haredi Jew, Petitioner's religious practice is stricter than that of other Jewish denominations. His treatment following the transfer reflects ICE's failure to

recognize or accommodate those distinctions. Rather than making individualized accommodations, ICE imposed a one-size-fits-all model of "Jewish" religious care.

102. Upon information and belief, Petitioner has been denied Glatt Kosher meals, had sacred items confiscated, been required to remove religious garments to access visitation, and seen rabbinical guidance dismissed or ignored. These accommodations are routinely granted to Christian and Muslim detainees, who receive meals, prayer space, and schedule modifications consistent with their faiths.

103. This disparate treatment—favoring less observant or more institutionally convenient religious practice—has no compelling justification. It imposes unjustified burdens on Petitioner's observance and violates the equal protection guarantee of the Fifth Amendment.

104. Because ICE has treated Petitioner differently based on his specific religious identity and observance, and because that treatment has caused deprivation of food, prayer, visitation, and dignity, the government has violated Petitioner's rights under the equal protection component of the Fifth Amendment.

105. Accordingly, Petitioner is entitled to immediate release or, in the alternative, injunctive and declaratory relief prohibiting continued discriminatory treatment and requiring individualized religious accommodations.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Issue a writ of habeas corpus under 28 U.S.C. § 2241 directing Respondents to immediately release Petitioner from immigration detention;

2. In the alternative, issue an injunction directing Respondents to release Petitioner under appropriate conditions of supervision, including but not limited to release to a verified

   sponsor and religious community support network, in accordance with due process and the least restrictive means standard required by law;

3. Declare his continued detention unlawful and in violation of his rights under the First and Fifth Amendments to the U.S. Constitution, RFRA and RLUIPA;

4. Declare that Respondents' actions and omissions, including their failure to accommodate Petitioner's religious practices, denial of access to kosher meals, prayer, and religious garments, and retaliation for religious expression, are unlawful and unconstitutional;

5. Enter an injunction prohibiting Respondents from re-detaining Petitioner in any facility that cannot fully and meaningfully accommodate his sincerely held religious beliefs, dietary needs, and practices, in accordance with RFRA, RLUIPA, and the Constitution;

6. Award reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other applicable provision of law;

7. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Peter Kapitonov*
New Jersey 028922012
Musa-Obregon Law, P.C.
199 Main Street, Suite 608
White Plains, NY 10601
PH: (914) 380-1436
P.Kapitonov@Musa-Obregon.com

 */s/ Waleed Naser\**
Illinois 6341786
Tennessee 037970
Naser Immigration Law, LLC
155 N. Wacker Dr. Suite 4250
Chicago, IL 606061
PH: (872) 265-8490
waleed@naserlegal.com

                                                                                                                                   */s/ Farah Chalisa*\*  
                                                                                                                                  IL 6335671  
                                                                                                                                  Naser Immigration Law, LLC  
                                                                                                                                  155 N. Wacker Dr., Suite 4250  
                                                                                                                                  Chicago, Illinois 60606  
                                                                                                                                  Telephone: 224-614-2770  
                                                                                                                                  farah@naserlegal.com

                                                                                                                                  \**Pro hac vice* motions forthcoming.

                                                                                                                                 Attorneys for Plaintiff.

Dated: April 4, 2025.